William C. McCorriston appearing on behalf of Petitioner Appellant Michael Boulware. So Counsel, in view of the voluntary dismissal, am I correct that there is only one issue remaining to be decided in this case? You are absolutely correct. And that issue is whether or not appropriate supervisory authority was obtained before assessing the penalties? That is also correct. So you may not need your entire time to address that one issue, so feel free to be as proficient and efficient as you can during your argument. Thank you, Your Honor. The argument is one issue whether or not Ms. Thompson, who is the supervisor in question in this case for the years 1994 through 1997, approved the penalties by written approval as required by Section 6751B1 of the Internal Revenue Code. And this is more of a factual matter than a legal matter. The factual matter is, according to the record below, did the government produce evidence showing compliance by Ms. Thompson of 651B1 approval? And the record that the Internal Revenue Service provided in this case is entirely based upon the declaration of Christina Thompson, the supervisor that was submitted in this case. It is true that in the 30-day notice, Ms. Thompson did sign the notice. The question is, what is the meaning of that signature? There is no approval language on that signature. There is no reference to penalties on that signature. There is simply her signature on the document. The government posits that... I'm sorry, Your Honor, I have a... there's an echo in the transmission. I said, did the document refer to the penalties? The document declaration of Christina Thompson or the 30-day notice itself. Did the 30-day notice reference the penalties? Yes, Your Honor, it does. So if the 30-day notice referenced the penalties and she signed the 30-day notice that referenced the penalties, why wasn't that prior approval? Because of what she said in her declaration contradicts that finding that it was prior approval. And I refer you, Your Honor, to the declaration of Christina Thompson. In that declaration, she says that she is required, before giving her approval on the penalties on the 30-day notice form, in paragraph four of that declaration, she outlines what she needs to do. She needs to... the word required is used by her in her declaration. She is required to memorialize her approval and attach her signature. The signature does appear on the 30-day notice form, but there is no memorialization of the approval. In her declaration, there is never an affirmative statement that the signature on the 30-day notice form was her intention to approve the penalties. Her declaration, in fact, states otherwise. In paragraph four of her declaration, she states that before she can affix and approve a penalty, she must memorialize it and sign it, and that there are internal rules that she must follow in order to do that. I am not suggesting in this argument, as the tax court assumed, that the internal rules of the Internal Revenue Service benefit the taxpayer. What I am saying is that the internal rules of the commissioner does have probative value as to what the evidence is, as to what the signature of the supervisor on a 30-day form means. It is probative of, does that signature mean approval of the penalties or not? And very clearly, in the evidence that they submitted to the tax court, she says no. She is following the protocol in the internal rules of the commissioner. In order to follow and approve, she must have written evidence of an approval, and she must sign it. And the way she does it, as she explains in her declaration, is she follows the internal procedures of the commissioner and attached to Exhibit A to her declaration is the form that she is required to provide and execute before she can sign off on an approval on a 30-day letter. Counsel, I just want to make sure I understand your argument. So is your argument that she disapproved the penalties? No. No, my argument is she did not approve the penalty until three months after the 30-day notice goes out. And under Clay, that's too late. You have to approve it at or before the time the 30-day notice goes out. You had something that happened procedurally here that kind of complicates things. Before the tax court, counsel stipulated or conceded that the exhibits that the government offered were sufficient on this issue. And so the government didn't offer additional testimony, the parent didn't come in and testify, there was no cross-examination. Nothing happened to explore this issue because there was a concession that the government had established that they had satisfied the statutory requirement. And then in response to your motion for reconsideration, the government alternatively relied on the 30-day letter itself in which the supervisor in a written form signed a document notifying the taxpayer of deficiencies and which the tax court also noted was against the backdrop following criminal prosecutions and other actions. And so there was, as the tax court put it, no doubt that there was going to be a notice of deficiency here. So why does that mean that we must look only at the stipulated declaration and exhibit rather than also considering the 30-day notice, which the government had no notice that they would need to elaborate upon at the time of the trial or the summary judgment motion? So you're correct in the first aspect of what you're asking me, that at the trial level, this matter did not come up because of the agreement of the parties to the exhibits. It did come up in the motion for reconsideration, as you've stated. In the motion for reconsideration, although the government argued that her signature on the 30-day notice constituted her approval, that is absolutely contrary to the evidence that they provided in the tax court. As I explained, she did not say that. The council is saying that. But she said something much different. So just what she said in her declaration established that this written approval can only be shown in one form and one form only. If a supervisor signs the 30-day letter and then also signs other forms later, does that mean that only one of these particular documents, there's one particular form, and that's the only one that counts? There has to be, under the rule, there has to be written approval memorialized and a signature. That's what she says. That's what the government offered as proof during the trial. That's what the statute says, right? And as I understand the case law, there's no particular form required. The statute just talks about written authorization from the supervisor. I think the problem we're having here is your argument is suggesting that there's only one document that could do that. And I think the government was sort of blindsided here. I don't know that it was intentional, but to stipulate that something, not just that the documents were admissible, but that they were sufficient to establish compliance with the statute. I'm not saying there's only one document that can do it. I'm not saying that. What I'm saying is that it would be very simple in a motion for reconsideration if the government's position was that the intention of Ms. Thompson in signing the 38-day notice was to indicate her approval. They could have simply said that. They simply could have supplemented the record. She does not say that, and they do not submit that as part of the record because it contradicts her earlier declarations that they submitted to the court. Look, it doesn't have to be in one form or the other, but it has to be in some form. And Christina Thompson never says anywhere that her signature on the 38-day notice is that document. She never says that. We're putting the carpet before the horse a little bit and going to this argument on the merits. So this was a motion to reconsider. Taxpayers' counsel had stipulated that the government had satisfied this statutory requirement, and your argument is intervening law as the basis for why this argument could be raised later and why the tax court abused its discretion in not allowing you to raise this later. Right, and this is based on the Clay case. Is that correct? That's largely correct. The Clay case had not occurred prior to the time of the tax court's original trial, and findings came subsequently to that, and we asked the court to consider the case again. Clay was after the decision, but the statute was enacted in 1998 or so, decades before. And there's a lot of case law talking about this issue before Clay. So why couldn't counsel have raised this issue? Why aren't they on notice that this was an issue even before the Clay decision? The case law is not consistent as even before. A predominant case usually cited and cited again in the government in this case out of the Second Circuit, which pushes the approval date back to the notice of determination, which occurs a lot later than the 30-day notice. And there's a lot of reasons as stated in Clay as why that case shouldn't be followed, except in the Second Circuit, because that puts the taxpayer in jeopardy and under coercion. You can't get a loan. You can't refinance your mortgage as long as this is pending. There's no reason. I guess what you're not answering is my question why the taxpayer could not have made the argument here. Why wasn't he able to make an argument based on a statute that had existed for decades and its requirements were known that, no, this isn't sufficient, rather than stipulating to say that it was? Because it has to be something that changed the landscape so that they couldn't reasonably have anticipated or made the argument. Clay changed the landscape. But it didn't change the landscape in that people weren't aware that this was an issue that was being litigated. Clay changed the landscape as to what the tax court's position would be as far as the timing of the supervisory approval. That's our argument. Did you want to save any time for rebuttal, Counsel? I didn't hear you. Save time for rebuttal. Yes, thank you, Your Honor. I'll save the rest of my time for rebuttal. All right, thank you. We'll hear from the Commissioner. Good afternoon. May it please the Court. Jacob Christensen, and I represent the Commissioner of Internal Revenue. The only remaining issue... You represented to us that you did not oppose the motion for voluntary dismissal. That's correct? That is correct, Your Honor. And you also agreed that each party should bear its own fees and costs? Yes, Your Honor. All right. I just wanted that on the record. The only issue remaining on appeal is whether the District Court abused its discretion in denying the taxpayers' motion for reconsideration. That motion sought to raise a new argument after the trial and after the tax court had issued its decision. In denying that motion, the tax court did not abuse its discretion for two reasons. First is that the motion did not satisfy the standard for reconsideration. And second, the new argument that the taxpayer sought to raise was without merit in any event. I'll begin with that second point. The Fifth Circuit's decision in PBBM Rose Hill, which we've cited on page 58 of our brief, is identical to the situation here with respect to the issue of supervisory approval. In that case, the Fifth Circuit held that the supervisor's signature on a 30-day letter proposing penalties and transmitting an underlying report by the examining agent in which the examining agent had determined that penalties should be proposed satisfied the plain language of the statute, the writing requirement, that the approval be in writing. In this case, the 30-day letter, which was not, as this court has pointed out, in the record at the time of the trial or the court's decision, but which the taxpayer sought to introduce on reconsideration, the 30-day letter itself, as this court has noted, was signed by the immediate supervisor of the examining agent. And the letter itself stated that we have enclosed that letter, which is in the record at SER 207, states that we have enclosed an examination report showing proposed changes to your tax for the period shown above. And further down in the letter, it refers to payment of the penalties, or if the taxpayer were to disagree with the proposed changes, that they could request a conference with the supervisor or with the appeals office. The enclosed examination report that was referenced, in turn, includes the examining agent's determination of the fraud penalty at issue here. And specifically, in the record at SER 211, states that with respect to the civil fraud penalty, it is determined that all or part of the underpayment of tax for the taxable year is due to fraud. So there's no question that when transmitting this examination report, in which the examining agent had determined to propose the fraud penalty, in transmitting that report with the 30-day letter that explicitly referenced the report and the proposed changes therein, the immediate supervisor's signature on that cover letter satisfied the requirements of the statute. That is precisely the holding of the Fifth Circuit's decision in PBBM Rose Hill. Counsel, what's your response to opposing counsel's argument that Ms. Thompson's declaration contradicts the letter? My response is that Mr. McCorson is reading too much into that declaration. The declaration simply states in paragraph 8 that, to document my approval on January 17, 2013, I signed a civil penalty approval form. It certainly does not rule out the notion that she could have provided written supervisory approval elsewhere or at another point in time, which she, in fact, had done in this case. Again, the 30-day letter on which the taxpayer relies here on reconsideration was not in the record at the time that this evidence was provided and submitted for the trial and relied on by the commissioner. And the commissioner, again, was unable to explore the arguments that are being made now by the taxpayer with respect to what this declaration means. But a fair reading of the declaration cannot be construed to rule out that she had previously provided written approval of the penalty. The second point is, in any event, the motion for reconsideration did not satisfy the standard for reconsideration. The trial court does not abuse its discretion by precluding new arguments on reconsideration. Moreover, there was no intervening change in the controlling law in this case. My friend refers to the decision, Clay v. Commissioner, by the tax court, but has failed to point to any prior controlling law that was changed by that decision. Specifically, if it's the decision, the Second Circus decision in Chai that was the prior controlling law, that decision was not controlling in this case. This case was appealable to this circuit, not to the Second Circuit. And so, pointing to the Second Circuit's decision does not help the taxpayer in establishing some prior controlling law that was changed by the tax court's decision in Clay v. Commissioner. So, for these two reasons, the tax court's decision should be affirmed. Unless there are any other questions from the panel, I will conclude. It appears not. Thank you, counsel. Thank you. Rebuttal? Just two points, Your Honor. One, the Commissioner's lawyer drafted the declaration that was signed by the supervisor, Ms. Thompson, not me. And the declaration is very specific in paragraph four of what she did, how she did it, and what it's meant. And there's no mention whatsoever that her signature on the 30-day notice form was her approval of the penalties. In fact, it's specifically not mentioned. And if that's really what she meant, contrary to what she said in the declaration, they should have supplemented it on the motions as reconsideration with a declaration from her, which would say that her signature was intended as her approval of the civil penalties. They did not because they could not. Because if she did that, she would have violated every single procedure that we've outlined and they outlined in the declaration of what she needs to do before she can sign off on a civil penalty declaration. That's why it wasn't submitted. That's why it wasn't clarified. That's why the record wasn't supplemented by the government. And then so far as controlling law and why Clay is not, the 9th Circuit has no controlling law before. What people did was cited to the 2nd Circuit law, which was the preeminent case up until then, which was the only, there may have been a 10th Circuit case too, but everybody cited to the 2nd Circuit. So Clay was new. Clay contradicted the Chai case, which the government relied on. And that's why the motion for reconsideration was timely and appropriate. All right, counsel. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Schroeder, Rawlinson, Bade